UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TRUSTEES OF THE LOCAL UNION 531, I.B.E.W. AND N.E.C.A. PENSION FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>HOOSIER COMMUNICATIONS LLC,<br><br>Defendant. | Case No. 3:22-CV-1016 JD |

**OPINION AND ORDER**

The Court now considers a motion for default judgment as to liability brought by Plaintiffs Trustees of the Local Union 531, I.B.E.W. and N.E.C.A. Pension Fund and the Trustees of the Local Union 531, I.B.E.W. and N.E.C.A. Money Purchase Pension Plan (collectively, "the Plaintiffs"). Plaintiffs seek a default judgment as to liability against Defendant Hoosier Communications LLC ("Hoosier"). Given the discussion below, the Court GRANTS Plaintiffs' motion for a default judgment as to liability. (DE 6.) However, default judgment shall not be entered until the total amount of damages has been calculated and submitted to the Court.

**A.      Background**

Plaintiffs, according to the Complaint, are trustees of two funds: (1) the Local Union 531, I.B.E.W. and N.E.C.A. Pension Fund ("the Pension Fund"), which is an "employee pension benefit plan" as defined by the Employee Retirement Income Security Act of 1974 (ERISA) and is organized for the sole purpose of providing defined-benefit pensions to certain eligible employees; and (2) the Local Union 531, I.B.E.W. and N.E.C.A. Money Purchase Pension Plan ("MPP Plan"), which is an "employee pension benefit plan" as defined by ERISA and is

organized for the purpose of providing retirement benefits to eligible employees. (DE 1 ¶¶ 6, 9.)[1] Both the MPP and the Pension Fund are "multiemployer plans" within the meaning of ERISA. *See* 29 U.S.C. § 1002 (explaining that a "multiemployer plan" is a plan in which "more than one employer is required to contribute," which is "maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer," and which satisfies other regulatory requirements). Hoosier is an employer bound by the terms of the collective bargaining agreement (CBA) between the Northern Indiana Chapter NECA, Inc. and Local Union 531, IBEW. (*Id.* ¶¶ 13–14.) As a party to the CBA, Hoosier was also bound to the terms of the Pension and MPP Trust Agreements, including a Joint Collection Policy. (*Id.* ¶¶ 21–23.) Pursuant to the CBA, Pension Trust Agreements, and the Joint Collection Policy, Hoosier was required to submit timely reports of hours paid to covered employees and to make contributions to the Pension and MPP Plans, as well as other employee benefit funds. (*Id.* ¶¶ 14, 23.) Contrary to these obligations, Hoosier did not report all hours paid to covered employees and did not remit all contributions due for the period of August 2022 through October 2022. (*Id.* ¶ 15.)

The Plaintiffs filed a Complaint on December 13, 2022, which alleges five causes of action: (1) Failure to Remit Contributions (ERISA § 515, 29 U.S.C. § 1145); (2) Breach of Contract & Failure to Remit Contributions/Reports (LMRA § 301, 29 U.S.C. § 185); (3) Failure to Pay Liquidated Damages, Interest and Audit Costs (ERISA § 515, 29 U.S.C. § 1145); (4) Breach of Contract & Failure to Pay Liquidated Damages, Interest and Audit Costs (LMRA § 301, 29 U.S.C. § 185); and (5) Order Compelling Payroll Audit (ERISA § 502, 29 U.S.C. § 1132). (DE 1.)

---

[1] The Court refers to the Pension Fund and the MPP Plan collectively as "the Funds."

Examination of the court files and record in this cause show that Hoosier was properly served the complaint and summons by way of certified mail on December 31, 2022. (DE 3 at 3 (showing that an agent of Hoosier signed upon delivery of the certified mail).) Under Rule 4(e), an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P 4(e)(1). Indiana allows for service of an organization via certified mail if the certified mail is "sent to 'an executive officer [or] an agent appointed or deemed by law to have been appointed to receive service' and that a written receipt be produced showing who accepted the certified mail." *Johnson, next friend of C.C. v. Hotel Mgmt. Servs. Inc.*, No. 3:21-CV-62 JD, 2021 WL 5177593, at *1 (N.D. Ind. Nov. 8, 2021) (quoting T.R. 4.6(A)(1)). Here, a receipt was submitted to the Court showing that an agent or executive officer of Hoosier signed upon delivery. (DE 3 at 3.) Service was therefore effective. *See* Fed. R. Civ. P. 4(e)(1) (permitting service pursuant to the law of the state in which the district court is located); Ind. R. Civ. P. 4.1(1) (permitting service upon an individual by registered or certified mail). Ind. R. Civ. P. 4.6 (permitting service on an organization by certified mail to the registered agent).

After service was perfected, Hoosier failed to plead, otherwise appear in this action, or respond to the complaint as required by Fed. R. Civ. P. 12(a)(1)(A). On February 1, 2023, Plaintiffs filed an application for entry of default pursuant to Fed. R. Civ. P. 55(a). (DE 4.) The clerk entered a default against Hoosier on February 2, 2023. (DE 5.) Hoosier has continuously failed to file an answer or any other responsive pleading and have not sought to set aside the default. As a result, Plaintiffs filed the instant motion for default judgment. (DE 6.)[2]

---

[2] The Court notes that the motion for default judgment did not include a certificate of service, however, no service is required on a party who has failed to enter an appearance. Fed. R. Civ. P. 5(a)(2).

**B.     Legal Standard**

Federal Rule of Civil Procedure 55 governs the entry of defaults and default judgments. *See Lowe v. McGraw-Hill Cos., Inc.*, 361 F.3d 335, 339 (7th Cir. 2004). Prior to obtaining a default judgment under Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a). *See Wolf Lake Terminals, Inc. v. Mat. Marine Ins. Co.*, 433 F. Supp. 2d 933, 941 (N.D. Ind. 2005). In the instant case, the clerk has already made the entry of default. (DE 5.)

Accordingly, the Court may now enter a default judgment under Rule 55(b)(2). However, the Court must exercise its discretion in doing so. *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993). A default judgment is justified when "the defaulting party has exhibited a willful refusal to litigate the case properly," as evinced by "a party's continuing disregard for the procedures of the court" and a "willful choice not to exercise even a minimal level of diligence." *Davis v. Hutchins*, 321 F.3d 641, 646 (7th Cir. 2003). In the present case, the Defendant has "exhibited a willful refusal to litigate the case properly," based upon its "continuing disregard" and failure to "exercise even a minimum level of diligence." *Id*. Proper service has not prompted Hoosier to plead, appear, or otherwise respond. (DE 3 (indicating that Hoosier Electric Inc. was served on December 31, 2022).) Additionally, Defendant is a business and thus not an infant, incapacitated, or in the military. *See, e.g.*, *UMG Recordings, Inc. v. Stewart*, 461 F. Supp. 2d 837, 841 (S.D. Ill. 2006) (listing requirements that a party seeking default judgment must establish before being able to proceed). Thus, the entry of default is not based on a simple technicality, and there is no apparent reason why the Court should not proceed to considering a default judgment in favor of the Plaintiffs.

"The basic effect of an entry of default (step one) is that '[u]pon default, the well-pleaded allegations of a complaint relating to liability are taken as true.'" *VLM Food Trading Int'l, Inc. v.*

*Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). Even though the Court accepts the well-pleaded allegations of a complaint relating to liability as true, it still must inquire into whether those well-pleaded allegations state a prima facie case as to liability. *See Heartland Footwear Sales Inc. v. 8215774 Canada, Inc.*, No. 3:19 CV 1142-PPS-MGG, 2021 WL 1732078, at *2 (N.D. Ind. May 3, 2021) ("[A]n entry of default judgment is only appropriate if the allegations, along with other evidence submitted, establish a cognizable claim for relief."); *Franko v. All About Travel Inc.*, No. 2:09-CV-233 JVB, 2014 WL 2803987, at *1 (N.D. Ind. June 19, 2014) ("Default judgment is appropriate only if the well-pleaded allegations of the complaint are sufficient to establish a legal claim."); *Ford Motor Credit Co. LLC v. Fincannon Ford, Inc.*, No. 1:19-CV-502-HAB, 2020 WL 6336209, at *1 (N.D. Ind. Oct. 29, 2020) (first determining whether "the well-pleaded facts establish liability" prior to turning to damages).

Once liability is determined, the "plaintiff still must establish his entitlement to the relief he seeks." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* As a result, when considering a motion for default judgment, a court often must hold a hearing to determine damages. *O'Brien*, 998 F.2d at 1404. But if the damages are "capable of ascertainment from definitive figures contained in documentary evidence or detailed affidavits," such a hearing is unnecessary. *Id*.

Courts will often allow the plaintiff to submit documentary evidence or move for a hearing to determine damages after an initial finding as to liability. *See, e.g., Carpenters Pension*

*Fund of Illinois v. Precision Mech. Grp., Inc.*, No. 19-3168, 2020 WL 10355784, at *2 (C.D. Ill. Mar. 6, 2020) (finding that "Plaintiffs are entitled to default judgment as to liability and are entitled to conduct an audit of the payroll books and records of Defendant to determine damages" but that judgment "will not be entered . . . until the total amount of damages has been calculated and submitted to the court"); *Miller v. Straks*, No. 18-CV-1126-PP, 2023 WL 2529342, at *6 (E.D. Wis. Mar. 15, 2023) (granting motion for default judgment and ordering plaintiff to file a separate motion for damages and any supporting documentation); *Holloway v. City of Milwaukee*, No. 19-CV-1460, 2020 WL 6870098, at *3 (E.D. Wis. Nov. 23, 2020) (explaining that a prior grant of default judgment as to liability "clearly contemplate[d] a subsequent hearing to establish the amount of Plaintiff's damages" and so did "not amount to a final default judgment"). Accordingly, the Court will determine if default judgment as to liability is warranted. If so, the Court will not immediately enter default judgment, but will allow Plaintiffs to file a subsequent motion for the entry of default judgment that also contains evidence to support the damages they seek.

**C.  Discussion**

The Court first addresses liability as to Count 1 and Count 2. In Count 1, Plaintiffs allege that Hoosier is liable for failing to remit contributions under ERISA § 515. "The Multiemployer Pension Plan Amendments Act ("MPPAA"), Pub.L. 96-364, 94. Stat. 1208 (Sept. 26, 1980), imposes liability on employers who withdraw from multiemployer plans governed by ERISA." *Midwest Operating Engineers v. Dredge*, 147 F. Supp. 3d 724, 741 (N.D. Ill. 2015). Under Section 515 of ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions

6

of such plan or such agreement." 29 U.S.C. § 1145. Fiduciaries of the plan are authorized to bring suit under section 1132(a), which allows a fiduciary to seek relief for violations of section 1145.

The elements required to show that Defendants are liable under Count 2, which seeks liability for violating section 301 of the Taft-Hartley Act (also known as the Labor Management Relations Act (LMRA), are co-extensive with Count 1. Under section 301 of the Taft-Hartley Act, "the breach of a contract between a union and an employer" is actionable. *Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 667 (7th Cir. 2007). Because the breach alleged by Plaintiffs is the failure to make contributions to the Funds as required under the CBA, the elements of this claim are essentially identical to those required in Count 1. *See NECA-IBEW Pension Tr. Fund v. Bays Elec., Inc.*, 894 F. Supp. 2d 1071, 1083 (C.D. Ill. 2012) (explaining that "since the breach of a contract between a union and an employer is actionable under section 301 [of the Taft-Hartley Act], 29 U.S.C. § 185(a), Plaintiffs can base their claim on this section as well as ERISA"). If Plaintiffs' Complaint sufficiently alleges that Hoosier was a party to the CBA, that, pursuant to the CBA, signatory employers are required to make monthly contributions to the funds of which Plaintiffs are trustees, and that Hoosier was delinquent in contributing to those funds, then liability under both Count 1 and Count 2 is sufficiently established. *See Trustees of Indiana State Council of Roofers Health & Welfare Fund v. Ed Rutherford Roofing, Inc.*, (N.D. Ind. Feb. 3, 2020) (explaining that Plaintiffs provided sufficient evidence to show a violation of 29 U.S.C. § 1145 as to each of the required elements).

Here, the allegations by the Plaintiffs are sufficient to establish liability as to Count 1 and Count 2. First, Plaintiffs allege that they are the trustee of the Pension Fund and the trustee of the MPP Plan. Next, Plaintiffs allege that Hoosier was a party to and agreed to abide by the terms of

the CBA. (DE 1 ¶¶ 20, 29.) Plaintiffs further allege that Hoosier was required to make contributions to the Funds under the terms of the CBA. (*Id.* ¶¶ 21, 30.) Plaintiffs also allege that, pursuant to the CBA, Hoosier was required to submit accurate monthly reports of hours paid to covered employees and to remit full and correct contribution payments. (DE 1 ¶¶ 23, 32.) These reports were to be submitted by the 15th day of the month following the month in which work was performed and that, if payments were not made by this due date, they were delinquent. (*Id.* ¶¶ 24, 33.) Finally, Plaintiffs adequately allege that Hoosier breached the CBA by failing to report all hours paid to covered employees and failing to remit all contribution payments due for the period of August 2022 through October 2022. (*Id.* ¶¶ 15, 25, 34.)

Given that Plaintiffs alleged that they were the trustees of the funds in question, that Hoosier was a party to the CBA, that Hoosier had certain obligations under the CBA, and that Hoosier breached these obligations, the Court finds that Plaintiffs' allegations in their Complaint are sufficient to support liability as to Count 1 and Count 2. The Court notes that Count III and Count IV indicate that Plaintiffs are seeking liquidated damages, interest, and audit costs. Rather than being an independent source of liability, whether Plaintiffs are entitled to those damages will be considered below when the Court addresses whether Plaintiffs have provided adequate evidence to support the remedies they seek.

As to Count V, 29 U.S.C. § 1132(g)(2)(e) permits this Court to award "equitable relief as the court deems appropriate" in any action for failing to remit contributions under ERISA § 515 in which a judgment in favor of the plan is awarded. As explained above, judgment is warranted as to Plaintiffs' claim for failure to remit contributions. Plaintiffs seek an order compelling Defendant to provide Plaintiffs with the missing reports from August 1, 2022, through October 31, 2022, and to submit to a payroll audit to determine the amounts owed from November 1,

2021, through the date of the audit. Such an order appears appropriate because, without such an audit, determining the damages Plaintiffs are entitled to would be impossible.

**D.**     **Conclusion**

The Court GRANTS the motion for default judgment as to liability. (DE 6.) Defendant is DIRECTED to provide the missing reports from August 2022 through October 2022 which are necessary for Plaintiffs to conduct the audit. Defendants are also DIRECTED to submit to a payroll audit to determine the amounts owed from November 1, 2021, through the date of the audit. Once the audit is completed, Plaintiffs shall file a Motion for Entry of Judgment seeking a specific total for all recoverable damages, including attorney's fees, or a status report indicating how Plaintiffs intend to proceed. Plaintiffs shall serve a copy of this order on Defendant Hoosier in accordance with Rule 5 of the Federal Rules of Civil Procedure.

SO ORDERED.

ENTERED: April 3, 2023

/s/ JON E. DEGUILIO
Chief Judge
United States District Court