UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TRUSTEES OF THE LOCAL UNION 531, I.B.E.W. AND N.E.C.A. PENSION FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> HOOSIER COMMUNICATIONS LLC, <br><br> Defendant. | Case No. 3:22-CV-1016 JD |

## OPINION AND ORDER

The Court now considers a motion for default judgment as to damages brought by Plaintiffs the Local Union 531, I.B.E.W. and N.E.C.A. Pension Fund ("the Pension Fund") and the Local Union 531, I.B.E.W. and N.E.C.A. Money Purchase Pension Plan ("MPP Plan"). (DE 15.) Both Plaintiffs are "employee pension benefit plans" as defined by ERISA. (DE 1 ¶¶ 6, 9.) Hoosier is an employer bound by the terms of the collective bargaining agreement (CBA) between the Northern Indiana Chapter NECA, Inc. and Local Union 531, IBEW. (*Id.* ¶¶ 13–14.) As a party to the CBA, Hoosier was also bound to the terms of the Pension and MPP Trust Agreements, including a Joint Collection Policy. (*Id.* ¶¶ 21–23.) Pursuant to the CBA, Pension Trust Agreements, and the Joint Collection Policy, Hoosier was required to submit timely reports of hours paid to covered employees and to make contributions to the Pension and MPP Plans, as well as other employee benefit funds. (*Id.* ¶¶ 14, 23.)

The Plaintiffs filed a Complaint on December 13, 2022, which alleged five causes of action: (1) Failure to Remit Contributions (ERISA § 515, 29 U.S.C. § 1145); (2) Breach of Contract & Failure to Remit Contributions/Reports (LMRA § 301, 29 U.S.C. § 185); (3) Failure

to Pay Liquidated Damages, Interest and Audit Costs (ERISA § 515, 29 U.S.C. § 1145); (4) Breach of Contract & Failure to Pay Liquidated Damages, Interest and Audit Costs (LMRA § 301, 29 U.S.C. § 185); and (5) Order Compelling Payroll Audit (ERISA § 502, 29 U.S.C. § 1132). (DE 1.)

For each count, the Plaintiffs alleged that Hoosier failed to report hours paid and remit contribution payments during the period of August through October of 2022. (Count I, *Id.* ¶ 25 ("Defendant failed to timely report all hours paid and timely remit all contribution payments for work performed by covered employees for the period of *August through October of 2022* as required by the CBA, Trust Agreements, and Joint Collection Policy."); Count II, *Id.* ¶ 34 ("Defendant failed to report all covered hours worked, nor made contributions, for the months of *August through October of 2022*."); Count III, *Id.* ¶¶ 44–45 ("For the months of *August through October of 2022*, Defendant failed to report covered hours worked to the Funds. As a result, Defendant is liable for liquidated damages [and interest] for any contributions owed for work performed during those months."); Count IV, *Id.* ¶¶ 54–55 ("For the months of *August through October of 2022*, Defendant failed to submit monthly payroll reports to the Funds. As a result, Defendant is liable for liquidated damages [and interest] for any contributions owed for work performed during those months."); *see also Id.* ¶¶ 15–17 (explaining that "Defendant failed to submit monthly reports and remit all contribution payments due for the period of *August through October of 2022*" and that as a result the Defendant "is liable to Plaintiff, the Pension Fund, for delinquent contributions for covered hours worked during the period of *August through October of 2022*[.]") (emphasis added).) Count V also specifically alleged that a payroll audit was necessary to determine "the number of covered hours worked and wages paid to Defendant's employees for the months of *August through October of 2022*." (*Id.* ¶ 62.)

On February 8, 2023, after default was entered, the Plaintiffs filed a motion for default judgment requesting that the court enter "default judgment as to liability on Counts I through IV of Plaintiffs' Complaint, plus an order on Count V of Plaintiffs' Complaint requiring Defendant to promptly furnish reports of covered work performed from August 1, 2022 through October 31, 2022, and further requiring Defendant to submit to a payroll audit to determine the amounts owed from November 1, 2021 through the date of the audit." (DE 7 at 5.)

The Court entered judgment on liability as to Counts I through IV, explaining that the Plaintiffs "adequately allege[d] that Hoosier breached the CBA by failing to report all hours paid to covered employees and failing to remit all contribution payments due for the *period of August 2022 through October 2022*." (DE 8 at 8 (emphasis added).) The Court also ordered a payroll audit for the period of November 1, 2021, through the date of the audit, relying on the Plaintiffs' allegation that such an audit was necessary to determine "the number of covered hours worked and wages paid to Defendant's employees for the months of *August through October of 2022*." (DE 1 ¶ 62 (emphasis added).)

Plaintiffs have now filed a motion for entry of judgment as to damages. However, they are now seeking damages which do not appear to stem from Hoosier's failure to report hours and remit contributions from August through October of 2022. Rather, Plaintiffs now seek damages for the "breach[] [of] failing to make the required contributions for work performed by [Hoosier's] employees *from January 1, 2022 through September 17, 2022*." (DE 16 at 3 (emphasis added).) These damages do not appear appropriate. This Court only granted default judgment as to liability on Counts I through IV, which each alleged that Hoosier failed to remit contribution payments due "for the period of August 2022 through October 2022." It was never alleged in any of those counts that Hoosier failed to remit contribution payments from January 1,

3

2022, through July of 2022. Accordingly, Hoosier's liability for any conduct during that period has never been established.

The Plaintiffs also cite no legal authority to explain why damages for the period of January 1, 2022 through July of 2022, would be appropriate given that the Complaint alleges, for each count, that the failure to report covered hours and remit contributions was for the period of August 2022 through October 2022. If Plaintiffs have such authority, then they need to include it in any subsequent motion.

Accordingly, the Court DENIES Plaintiffs' motion for default judgment as to damages without prejudice. (DE 15.) If the Plaintiffs have legal authority to support awarding damages for the period of January 1, 2022, through July 2022, then they must include it. If not, then they are only permitted to seek damages caused by the conduct that Hoosier was found liable for: meaning, the failure of Hoosier to submit monthly reports and to remit all contribution payments due for the period of August through October of 2022.

SO ORDERED.

ENTERED: July 13, 2023

        /s/ JON E. DEGUILIO
Chief Judge
United States District Court