UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TRUSTEES OF THE LOCAL UNION 531, I.B.E.W. AND N.E.C.A. PENSION FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> HOOSIER COMMUNICATIONS LLC, <br><br> Defendant. | Case No. 3:22-CV-1016 JD |

**OPINION AND ORDER**

Before the Court is a renewed motion for default judgment as to damages brought by Plaintiffs the Local Union 531, I.B.E.W. and N.E.C.A. Pension Fund ("the Pension Fund"); and the Local Union 53, I.B.E.W, and N.E.C.A. Money Purchase Pension Plan ("MPP Plan"). (DE 15.) Both Plaintiffs are "employee pension benefit plans" as defined by ERISA. (Complaint, DE 1 ¶¶ 6, 9.) Defendant Hoosier Communications is an employer bound under the collective bargaining agreement (CBA) between the Northern Indiana Chapter NECA, Inc. and Local Union 531, IBEW. (*Id.* ¶¶ 13–14.) As a party to the CBA, Defendant was also bound to the terms of the Pension and MPP Trust Agreements, including a Joint Collection Policy. (*Id.* ¶¶ 21–23.) Under the CBA, Pension Trust Agreements, and the Joint Collection Policy, Defendant had to submit timely reports of hours paid to covered employees and to contribute to the Pension and MPP Plans, as well as other employee benefit funds. (*Id.* ¶¶ 14, 23.)

Plaintiffs filed a Complaint on December 13, 2022, which alleged five causes of action: (1) Failure to Remit Contributions (ERISA § 515, 29 U.S.C. § 1145); (2) Breach of Contract & Failure to Remit Contributions/Reports (LMRA § 301, 29 U.S.C. § 185); (3) Failure to Pay

Liquidated Damages, Interest and Audit Costs (ERISA § 515, 29 U.S.C. § 1145); (4) Breach of Contract & Failure to Pay Liquidated Damages, Interest and Audit Costs (LMRA § 301, 29 U.S.C. § 185); and (5) Order Compelling Payroll Audit (ERISA § 502, 29 U.S.C. § 1132). (Complaint, DE 1.)

For each count, the Plaintiffs alleged that Defendant failed to report hours paid and remit contribution payments during the period of August through October 2022. (Count I, *Id.* ¶ 25 ("Defendant failed to timely report all hours paid and timely remit all contribution payments for work performed by covered employees for the period of *August through October of 2022* as required by the CBA, Trust Agreements, and Joint Collection Policy."); Count II, *Id.* ¶ 34 ("Defendant failed to report all covered hours worked, nor made contributions, for the months of *August through October of 2022*."; Count III, *Id.* ¶¶ 44–45 ("For the months of *August through October of 2022*, Defendant failed to report covered hours worked to the Funds. As a result, Defendant is liable for liquidated damages [and interest] for any contributions owed for work performed during those months."); Count IV, *Id.* ¶¶ 54–55 ("For the months of *August through October of 2022*, Defendant failed to submit monthly payroll reports to the Funds. As a result, Defendant is liable for liquidated damages [and interest] for any contributions owed for work performed during those months."); *see also id.* ¶¶ 15–17 (explaining that "Defendant failed to submit monthly reports and remit all contribution payments due for the period of *August through October of 2022*" and that as a result Defendant "is liable to Plaintiff, the Pension Fund, for delinquent contributions for covered hours worked during the period of *August through October of 2022*[.]") (emphasis added).) Count V also specifically alleged that a payroll audit was necessary to determine "the number of covered hours worked and wages paid to Defendant's employees for the months of *August through October of 2022*." (*Id.* ¶ 62 (emphasis added).)

On February 8, 2023, after default was entered, the Plaintiffs moved for default judgment requesting that the Court enter "default judgment as to liability on Counts I through IV of Plaintiffs' Complaint, plus an order on Count V of Plaintiffs' Complaint requiring Defendant to promptly furnish reports of covered work performed from August 1, 2022 through October 31, 2022, and further requiring Defendant to submit to a payroll audit to determine the amounts owed from November 1, 2021 through the date of the audit." (DE 7 at 5.)

The Court entered judgment on liability as to Counts I through IV, explaining that the Plaintiffs "adequately allege[d] that Hoosier breached the CBA by failing to report all hours paid to covered employees and failing to remit all contribution payments due for the *period of August 2022 through October 2022*." (DE 8 at 8 (emphasis added).) The Court also ordered a payroll audit for the period of November 1, 2021, through the date of the audit, relying on the Plaintiffs' allegation that such an audit was necessary to determine "the number of covered hours worked and wages paid to Defendant's employees for the months of *August through October of 2022*." (DE 1 ¶ 62 (emphasis added).)

After the audit was completed, Plaintiffs moved for entry of judgment as to damages. However, they were seeking damages which did not appear to stem from Defendant's failure to report hours and remit contributions from August through October 2022. Rather, Plaintiffs sought damages for the "breach[] [of] failing to make the required contributions for work performed by [Hoosier's] employees *from January 1, 2022, through September 17, 2022*." (DE 16 at 3 (emphasis added).) The Court found this request problematic because default judgment was granted as to liability on Counts I through IV, which each alleged that Defendant failed to remit contribution payments due "for the period of August 2022 through October 2022." It was never alleged in any of those counts that Defendant failed to remit contribution payments from

3

January 1, 2022, through July 2022. Accordingly, the Court found that Defendant's liability for any conduct during that period had never been established.

As a result, the Court denied Plaintiffs' motion without prejudice, granting leave to refile with citations to authority explaining why damages for the period of January 1, 2022, through July 2022, would be appropriate given that the Complaint alleges, for each count, that the failure to report covered hours and remit contributions was for the period of August 2022 through October 2022. The Court said that if Plaintiffs could not supply such authority, they were only permitted to seek damages caused by the conduct that Defendant was found liable for: "meaning, the failure of Defendant to submit monthly reports and to remit all contribution payments due for the period of August through October of 2022." (DE 17 at 4.)

In response to the Court's Order, Plaintiffs renewed their motion for entry of judgment as to damages. However, the motion fails to address the Court's concerns. Plaintiffs merely assert that, since Defendant signed the CBA before January 2022, it had to remit contributions in 2022 (Pls.' Br., DE 19 at 3), and that Plaintiffs' complaint put Defendant on notice that they would be seeking collection of all delinquent contributions disclosed by audit, which had been initiated before the suit was filed (*id*). For the latter proposition, Plaintiffs cite page 12 of their complaint (*see id.*), but the cited text stands contrary for what they're asserting:

> Plaintiffs have no way of verifying, absent an audit, the number of covered hours worked and wages paid to Defendant's employees for the months of *August through October of 2022*. Therefore, Plaintiffs have no way of ascertaining the precise amount owed in delinquent contributions, late fees, and interest for work performed during that time period.

(Complaint, DE 1 ¶ 62 (emphasis added).)

Plaintiffs also submit that "[t]o the extent that Plaintiffs' Complaint refers to the months of August through October 2022, such references were intended to illustrate Defendant's total

4

failure to report for those months, thus establishing one of Plaintiffs' reasonable bases for suit." (Pls.' Br, De 19 at 3.) But this is not true. As excerpts from the complaint quoted above show, each reference in the complaint to the time between August and October 2022 relates to the allegations of the actual contributions. (*See also* Complaint, DE 1 ¶¶ 15-17, 25, 34–45, 54–55, and 62.) There's no suggestion in the complaint that any other time period is being considered. Plaintiffs' renewed motion is effectively an attempt to amend the complaint, an improper vehicle for such an action.

The Court allowed Plaintiffs to either ask for judgment regarding missing contributions for the period of August through October 2022 or provide authority why damages for the period of January through July 2022, would be appropriate. Plaintiffs elected the latter option but provided <u>no</u> authority why they should be allowed to ignore the allegations in the complaint. Accordingly, the Court DENIES the renewed motion (DE 18). As a last resort, the Court will give one final leave for Plaintiffs to resubmit their motion in relation to the period of August through October 2022 only. Alternatively, the Plaintiffs may seek to amend their complaint consistent with the Federal Rules of Civil Procedure to make the necessary allegations regarding the time period of January through July 2022. If Plaintiffs choose to request attorney's fees, they should be mindful that any time spent on this case after the Court's original order denying the motion for default judgment (DE 17) should be excluded, or the proposed fee after that order should be additionally justified.

SO ORDERED.

ENTERED: March 25, 2024

                                        /s/ JON E. DEGUILIO
                                        Judge
                                        United States District Court